---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PATRICIA BLAIR, as personal representative for the Estate of Lee Blair;
VIOLET BUTLER, as personal representative for the Estate of Ralph Butler;
BETTY JEAN CAMILLERI, as personal representative for the Estate of Terrence
Camilleri; CHERYL D. WOOTER, as personal representative for the Estate of
William Cutler; KIMBERLY PLANT, as special administrator for the Estate of
Sheryl Evans; MARIA FONS, as personal representative for the Estate of Miguel
Fons; JOHN GUZMAN, as personal representative for the Estate of Joe Guzman;
CHRISTOPHER NELSON, as personal representative for the Estate of Roger
Nelson; MELISSA TAYLOR, as personal representative for the Estate of Donald
Taylor; THE LAW FIRM OF MAUNE, RAICHLE, HARTLEY, FRENCH &
MUDD, LLC,

*Appellants*,

v.

BESTWALL, LLC,

*Debtor-Appellee.*

On appeal from the U.S. District Court for the Western District of North Carolina,
Nos. 3:21-cv-00503-RJC, 3:21-cv-00510-RJC

### RESPONSE BRIEF OF APPELLEE BESTWALL LLC

Gregory M. Gordon
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Tex. 75201
(214) 220-3939
gmgordon@jonesday.com

C. Kevin Marshall
Megan Lacy Owen
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
ckmarshall@jonesday.com
mlacyowen@jonesday.com

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW &
HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, N.C. 28246
(704) 377-2536
gcassada@robinsonbradshaw.com
rworf@robinsonbradshaw.com

Preetha Suresh Rini
ROBINSON, BRADSHAW &
HINSON, P.A.
1450 Raleigh Rd.
Suite 100
Chapel Hill, N.C. 27517
(919) 328-8820
prini@robinsonbradshaw.com

*Counsel for Appellee Bestwall LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1981 (L); 22-1984   Caption: Patricia Blair, et al. v. Bestwall LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bestwall LLC
(name of party/amicus)

_____

who is __Appellee__, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?   ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Georgia-Pacific Equity Holdings LLC
   Georgia-Pacific Holdings LLC
   Koch Industries, Inc.
   Koch Renewable Resources, LLC

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☑YES ☐NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

   The members of the asbestos claimants' committee (and their individual tort system lawyers) are listed on Exhibit A attached hereto. The future claimants' representative is Sander L. Esserman.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ C. Kevin Marshall     Date: December 22, 2022

Counsel for: Bestwall LLC

# Exhibit A

## Asbestos Claimants' Committee

1. Paul Tice
   c/o Matthew Bergman
   Bergman Draper Oslund
   821 Second Avenue, Suite 2100
   Seattle, WA 98104

2. Margaret U. Trumbull
   c/o Lisa Busch
   Weitz & Luxenberg, P.C.
   700 Broadway
   New York, NY 10003

3. Steven J. Watts
   c/o Christian Hartley
   Maune Raichle Hartley French & Mudd, LLC
   300 W. Coleman Boulevard, Suite 200
   Mount Pleasant, SC 29464

4. Elizabeth Ann Harding,
   *Special Administrator of Steven Lanphear, Dec'd*
   c/o Beth A. Gori
   Gori Julian & Associates, PC
   156 North Main Street
   Edwardsville, IL 62025

5. Nikol Chuidian,
   *Special Administrator of Cresante Perreras, Dec'd*
   c/o Steven Kazan
   Kazan, McClain, Satterley & Greenwood, PLC
   55 Harrison Street, Suite 400
   Oakland, CA 94607

6.  Rick Benson
    c/o Andrew O'Brien
    O'Brien Law Firm, PC
    815 Geyer Avenue
    St. Louis, MO 63104

7.  Rick Bengston
    c/o Michael Shepard
    Shepard Law
    160 Federal Street
    Boston, MA 02110

8.  Barbara McAlpine,
    *Independent Administrator of the Estate of Martin Edward McAlpine*
    c/o Maura Kolb
    The Lanier Law Firm
    6810 FM 1960 West
    Houston, TX 77069

9.  Emma Pearl Dixon
    c/o Armand J. Volta, Jr.
    Law Offices of Peter G. Angelos, P.C.
    100 N. Charles Street, 22nd Floor
    Baltimore, MD 21201

10. Patricia Deetz,
    *Special Administrator of Dave Deetz, Dec'd*
    c/o John D. Cooney
    Cooney & Conway
    120 N. LaSalle Street, 30th Floor
    Chicago, IL 60602

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

STATEMENT OF ISSUE.......................................................................................... 1

STATEMENT OF THE CASE.................................................................................. 2

    A.   Bestwall's Bankruptcy Case.................................................................... 2

    B.   The PIQ Order and Appeal...................................................................... 5

    C.   The Illinois Lawsuit and the Contempt and Sanctions Orders.................. 8

    D.   The Present Appeals .............................................................................. 11

    E.   Ongoing Disputes Concerning the PIQ Order......................................... 13

SUMMARY OF THE ARGUMENT ...................................................................... 16

ARGUMENT ........................................................................................................... 18

I.    BECAUSE THE APPELLANT CLAIMANTS ARE PARTIES, THEY ARE NOT
    ENTITLED, UNDER CIRCUIT PRECEDENT, TO APPEAL THE CONTEMPT AND
    SANCTIONS ORDERS AS OF RIGHT IN THE ABSENCE OF A FINAL "MAIN"
    ACTION ........................................................................................................ 18

II.   THERE HAS BEEN NO FINALLY RESOLVED MAIN "PROCEEDING" IN THE
    ONGOING BANKRUPTCY CASE TO AUTHORIZE APPEAL AS OF RIGHT OF
    THE INTERLOCUTORY CONTEMPT AND SANCTIONS ORDERS ........................... 25

    A.   Because the PIQ Order is a discovery order, it is inherently
         interlocutory, so even if finally resolved (which it is not), it would
         not conclude a "proceeding" .................................................................. 27

    B.   No potentially relevant actual "proceeding" in the bankruptcy case
         has finally concluded .............................................................................. 31

    C.   Appellants' counter-argument fails ....................................................... 34

CONCLUSION ........................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

C<span></span>ASES

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ................................................................32

*Algeran, Inc. v. Advance Ross Corp.*,
759 F.2d 1421 (9th Cir. 1985) ...............................................................19

*Bank of Maui v. Estate Analysis, Inc.*,
904 F.2d 470 (9th Cir. 1990) ................................................................34

*Berne Corp. v. Virgin Islands*,
570 F.3d 130 (3d Cir. 2009) ..................................................................21

*Bullard v. Blue Hills Bank*,
575 U.S. 496 (2015).......................................................................*passim*

*Carbon Fuel Co. v. United Mine Workers of Am.*,
517 F.2d 1348 (4th Cir. 1975) ...............................................................19

*Cleveland Hair Clinic, Inc. v. Puig*,
106 F.3d 165 (7th Cir. 1997) ...........................................19, 20, 21, 29

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994)................................................................................34

*Fox v. Capital Co.*,
299 U.S. 105 (1936)................................................................11, 19, 26, 27

*Grausz v. Englander*,
321 F.3d 467 (4th Cir. 2003) ...........................................................16, 22

*In re Armstrong*,
292 B.R. 678 (B.A.P. 10th Cir. 2003) ....................................................32

*In re Bestwall LLC*,
47 F.4th 233 (3d Cir. 2022) .....................................................................3

*In re Bestwall LLC*,
605 B.R. 43 (Bankr. W.D.N.C. 2019) ......................................................2

*In re Bestwall LLC*,
606 B.R. 243 (Bankr. W.D.N.C. 2019) ....................................................3

*In re Bestwall LLC*,
2022 WL 67469 (W.D.N.C. Jan. 6, 2022)................................................3

*In re Bryson*,
  406 F.3d 284 (4th Cir 2005) ..........................................................7, 28

*In re C.P. Hall Co.*,
  750 F.3d 659 (7th Cir. 2014) ................................................................22

*In re Connolly N. Am., LLC*,
  2011 WL 1357754 (E.D. Mich. Apr. 11, 2011) ..........................................*passim*

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) ......................................................22

*In re Kaiser Grp. Int'l, Inc.*,
  400 B.R. 140 (D. Del. 2009) ................................................................28

*In re Markus*,
  313 F.3d 1146 (9th Cir. 2002) ..............................................36, 37, 38

*In re Naranjo*,
  768 F.3d 332 (4th Cir. 2014) ..........................................................20, 21

*In re Norrie*,
  2016 WL 6407839 (B.A.P. 9th Cir. Oct. 26, 2016) ..................................39

*In re Reifler*,
  2018 WL 3212464 (S.D.N.Y. June 28, 2018) ..................................22, 24, 35, 37

*In re Rimsat, Ltd.*,
  98 F.3d 956 (7th Cir. 1996) ..........................................................20, 29

*In re Royce Holmes LP*,
  466 B.R. 81 (S.D. Tex. 2012) ................................................................28

*In re Stasz*,
  387 B.R. 271 (B.A.P. 9th Cir. 2008) ......................................................*passim*

*In re Teknek, LLC*,
  512 F.3d 342 (7th Cir. 2007) ................................................................27

*In re VeroBlue Farms USA, Inc.*,
  2021 WL 3260087 (N.D. Iowa June 30, 2021) ..........................................35, 36

*Klestadt & Winters, LLP v. Cangelosi*,
  672 F.3d 809 (9th Cir. 2012) ................................................................37

*Kowalski v. Paloian*,
2019 WL 2297457 (N.D. Ill. May 30, 2019) ................................................... 35

*LVNV Funding, LLC v. Harling*,
852 F.3d 367 (4th Cir. 2017) ........................................................................... 33

*McAlpin v. Lexington 76 Auto Truck Stop, Inc.*,
229 F.3d 491 (6th Cir. 2000) ........................................................................... 22

*MDK, Inc. v. Mike's Train House, Inc.*,
27 F.3d 116 (4th Cir. 1994) ......................................................................... 20, 21

*Oliner v. Kontrabecki*,
158 F. App'x 1 (9th Cir. 2005) ........................................ 27, 35, 36, 38

*Oliner v. Kontrabecki*,
305 B.R. 510 (N.D. Cal. 2004) ......................................................................... 35

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
462 F.3d 87 (2d Cir. 2006) ............................................................................... 19

*Regan v. Hon*,
2021 WL 3603051 (N.D.N.Y. Aug. 13, 2021) ................................................. 35

*Ritzen Grp. Inc. v. Jackson Masonry, LLC*,
140 S. Ct. 582 (2020) ................................................................................... 32, 38

*Serv. Emps. Int'l Union Local 32BJ v. Preeminent Protective Servs.*,
997 F.3d 1217 (D.C. Cir. 2021) ....................................................................... 21

*United States v. Myers*,
593 F.3d 338 (4th Cir. 2010) ....................................................... 11, 16, 19, 21

*W.S. Badcock Corp. v. Beaman*,
2015 WL 575422 (E.D.N.C. Feb. 11, 2015) ................................................... 28

**STATUTES**

11 U.S.C. § 502 ...................................................................................... 3, 32

11 U.S.C. § 524 .......................................................................... 2, 6, 23, 31

11 U.S.C. § 1102 ............................................................................................ 2

11 U.S.C. § 1103 ............................................................................................ 2

11 U.S.C. § 1109 .................................................................................... 16, 22

**Page(s)**

28 U.S.C. § 157 ..............................................................................32, 33

28 U.S.C. § 158 .................................................................................*passim*

28 U.S.C. § 1291 ...........................................................................27, 37

**OTHER AUTHORITIES**

7 Collier on Bankruptcy ¶ 1109.02 (16th ed. 2022) ................................23

Fed. R. Bankr. P. 2004 ......................................................................*passim*

Fed. R. Bankr. P. 7001, *et seq.*...............................................................26

Fed. R. Bankr. P. 9014 .............................................................................26

Fed. R. Bankr. P. 9020 .............................................................................37

9B Charles A. Wright et al., Fed. Prac. & Proc. (2d ed.) ..................22, 24

15B Charles A. Wright et al., Fed. Prac. & Proc. (2d ed.) ................19, 21

## STATEMENT OF ISSUE

1.     Did the District Court correctly conclude that the Contempt and Sanctions Orders the Bankruptcy Court issued against certain claimants and one of their law firms for collaterally attacking that court's discovery order were not appealable as of right?

# STATEMENT OF THE CASE

## A.    Bestwall's Bankruptcy Case

Bestwall initiated its bankruptcy case in November 2017 by filing a Chapter 11 petition. Bestwall seeks to resolve current and future asbestos-related claims against it by developing and obtaining confirmation of a plan of reorganization that establishes a trust to pay those claims under 11 U.S.C. § 524(g). The Bankruptcy Court appointed an Official Committee of Asbestos Claimants (the "Official Committee"), whose duty is to represent current asbestos claimants against Bestwall, 11 U.S.C. §§ 1102 & 1103(c); and, in accordance with § 524(g)(4)(B)(i), a Future Claimants' Representative, whose duty is to protect the rights of individuals who will make demands after a plan is confirmed (together, the "Claimant Representatives"). *See* JA141; D.I. 278, No. 17-31795 (Bankr. W.D.N.C.).

The Claimant Representatives have vigorously litigated the bankruptcy case. The Bankruptcy Court denied the Official Committee's motion to dismiss, *In re Bestwall LLC*, 605 B.R. 43 (Bankr. W.D.N.C. 2019); this Court declined the Official Committee's request to authorize a direct appeal, D.I. 13, No. 19-408 (Nov. 14, 2019); and the District Court has not granted its motion for leave to appeal to that court, No. 19-00396-RJC (W.D.N.C.). The Bankruptcy Court also granted, over the Claimant Representatives' joint opposition, Bestwall's request for a preliminary injunction prohibiting the assertion of derivative asbestos-related liability against

Bestwall affiliates. *In re Bestwall LLC*, 606 B.R. 243 (Bankr. W.D.N.C. 2019). The Claimant Representatives appealed, and the District Court affirmed. *In re Bestwall LLC*, 2022 WL 67469 (W.D.N.C. Jan. 6, 2022). The Claimant Representatives' further appeal to this Court was argued in December and is pending. Nos. 22-1127(L), 22-1135.

Meanwhile, Bestwall has filed a plan of reorganization that proposes to create and fund a $1 billion trust, and has, with the Bankruptcy Court's approval, established and funded—in the same $1 billion amount—a qualified settlement fund for the exclusive benefit of asbestos claimants. *See* D.I. 1398, at 8, No. 17-31795 (Bankr. W.D.N.C.). But Bestwall and the Claimant Representatives have not yet been able to agree to the terms of the plan. Chiefly, they have yet to agree on the extent of Bestwall's current and future asbestos-related liabilities to establish an agreed trust-funding amount. To inform a reliable estimate of those liabilities, Bestwall has sought discovery, including from the current claimants and from asbestos trusts established in connection with the bankruptcies of other companies. *See generally In re Bestwall LLC*, 47 F.4th 233, 239 (3d Cir. 2022) (describing the "dispute over how Bestwall's liabilities should be calculated" and ordering enforcement of Bankruptcy Court subpoena authorizing discovery from certain asbestos trusts). In addition, the Bankruptcy Court has granted Bestwall's motion asking it, in accordance with 11 U.S.C. § 502(c), to estimate Bestwall's aggregate

liability for current and future mesothelioma claims based on alleged exposures to certain products of its predecessor. D.I. 1577, No. 17-31795 (Bankr. W.D.N.C.). Preparations for the estimation hearing, which will be a multi-day evidentiary proceeding, are ongoing. An estimation trial was set for October 2023, but the parties have acknowledged that this timing will need to be extended.

Appellants are nine individual asbestos claimants against Bestwall (or the representatives of their estates), as well as the law firm Maune, Raichle, Hartley, French & Mudd, LLC, which represents asbestos claimants. At the outset of its case, Bestwall listed eight of these claimants, among many others, as "creditors with unsecured non-priority claims" that are disputed, contingent, and unliquidated. D.I. 156, Sch. E/F, Pt. 2, Att. at 162, 286, 300, 466, 620, 666, 819, 1482, No. 17-31795 (Bankr. W.D.N.C.). All were listed among the claimants subject to Bestwall's motion for preliminary injunction. JA1582; JA 1781–82; JA1813; JA1902; JA2032; JA2054; JA2176; JA1212. Eight of the nine then appeared through counsel to object to the preliminary injunction. *See* JA1582; JA1781–82; JA1813; JA1902; JA2032; JA2054; JA2176; JA2247–51; JA2253–55; JA2259–62; JA2266–67; JA2271–72. Law firms representing those eight claimants, including the Maune Raichle firm, have been admitted *pro hac vice* in the bankruptcy case to represent them. *See* JA146; JA153; JA155; JA161; JA167; JA173; JA179; JA181; JA183; JA185. Three of the law firms representing the Appellant claimants, including Maune Raichle,

represent a claimant who is on the Official Committee. *See* JA141–42. Maune Raichle also is special litigation counsel for the Official Committee on medical-science matters. *See* JA143–44.

### B. The PIQ Order and Appeal

In a bankruptcy case, Rule 2004 of the Federal Rules of Bankruptcy Procedure provides a mechanism for discovery to gather, with bankruptcy-court approval, information relevant to aspects of the case. *See* Fed. R. Bankr. P. 2004(b). Bestwall moved under this rule to direct current claimants against it to submit a Personal Injury Questionnaire ("PIQ"), as has been done in other asbestos bankruptcies. *See* JA187. Bestwall's proposed PIQ sought discovery about the status of current claimants' pending personal-injury claims, their mesothelioma diagnoses, their allegations of exposure to asbestos-containing products, their claimed losses, and their claims against and recoveries from other asbestos tort defendants or trusts. *See* JA804–05. Bestwall noticed its motion widely, consistent with the Bankruptcy Court's order at the outset of the case establishing notice and other administrative procedures. *See* JA1374; JA213 (Affidavit of Service). The Official Committee filed an objection, and dozens of law firms—including Maune Raichle—specially joined on behalf of their individual-claimant clients. *See* JA251 (Committee); JA493 (joinder). Indeed, as the Bankruptcy Court explained, all but one of the individual Appellants here specially joined the Official Committee's objection. *See* JA493–99;

JA1582; JA1781–82; JA1813; JA1902; JA2032; JA2054; JA2176; JA1212; JA1374.

The Bankruptcy Court held a hearing in January 2021, at which Mr. Raichle of the Maune Raichle firm "appeared personally before the court, in opposition to the PIQ motion." JA1375; JA600; JA695. In its March 2021 bench ruling, the court observed that the PIQ Bestwall had requested would be "helpful to all parties and efficient for purposes of an estimation proceeding" and was consistent with, if not more targeted than, similar questionnaires in prior asbestos bankruptcies. JA782, JA785. It accordingly entered an order under Rule 2004 directing current asbestos claimants against Bestwall to submit responses to the PIQs. *See* JA788 (the "PIQ Order"). The PIQ Order concluded that the discovery Bestwall requested is "relevant to estimation of the asbestos liability of the Debtor and the negotiation, formulation, and confirmation of a section 524(g) plan of reorganization." JA789. That order also approved a form questionnaire and provided measures to protect the confidentiality of information supplied through the PIQ. *See* JA789–90. It further directed Bestwall's claims agent to serve a copy of the PIQ on (among others) counsel of record for all current asbestos claimants in underlying personal-injury litigation and required claimants to respond by July 26, 2021. *See* JA790–92. Recipients could also respond that they "do not assert a claim against Bestwall" or have resolved their

claim. JA807. Finally, the PIQ Order provided that "[a]ny person who seeks relief from any provision of this Order shall do so by motion in this Court." JA800.

The Official Committee, the Future Claimants' Representative, and numerous individual claimants appealed, and in the alternative sought leave to appeal, the PIQ Order under 28 U.S.C. § 158(a)(3). All but one of the individual Appellants were parties to that prior appeal, one represented by Maune Raichle (who also appealed on behalf of other clients). *See* JA493–99; JA1016; JA1582, 1781–82, 1813, 1902, 2032, 2054, 2176; JA1212.

The District Court in May 2021 held that the PIQ Order was not appealable as a final order, denied leave, thus dismissed the appeal, and affirmed. *See* JA1037 (dismissing Committee's appeal); *see also* JA3046 (dismissing individual claimants' appeal); JA3051 (dismissing Representative's appeal). As to finality, the District Court recognized the general rule in this Circuit that "discovery orders are not final decisions subject to immediate appeal." JA1042 (citing, among other authority, *In re Bryson*, 406 F.3d 284, 288 (4th Cir 2005)). The court concluded that the PIQ Order, as a Rule 2004 "discovery order," was likewise "interlocutory, as it does not finally dispose of a concrete issue in the case and is therefore not a final order under 28 U.S.C. § 158(a)." JA1042.

In denying leave to appeal, the District Court explained that, even if it reversed the PIQ Order, "the litigation would return to the Bankruptcy Court for the

estimation proceeding, and [Bestwall] would seek to gather the same information through different means while looking to present its estimation of the case. …" JA1044. As a result, "[t]he underlying dispute between the parties would be maintained and not diminished." JA1044–45. The District Court also recognized that, as the Bankruptcy Court had noted, "other Courts have previously approved and relied upon similar questionnaires to the one at issue here." JA1045. Later, the District Court granted in part and denied in part the Official Committee's motion for rehearing, vacating its affirmance of the PIQ Order while declining otherwise to reconsider its "jurisdictional decisions that the PIQ Order is not a final order for the purposes of 28 U.S.C. § 158(a)(1)" and its denial of leave. No party further appealed.

## C.     The Illinois Lawsuit and the Contempt and Sanctions Orders

A month after the District Court dismissed the Official Committee's appeal of the PIQ Order, certain claimants subject to the PIQ Order sued in the Southern District of Illinois (the "Illinois Lawsuit") to enjoin Bestwall from enforcing it. JA1067. Plaintiffs in the Illinois Lawsuit alleged that they were exposed to asbestos in Bestwall products and had received no compensation for their claims against Bestwall. JA1069–74. Maune Raichle signed the complaint. JA1086.

Two days after that, Bestwall filed in the Bankruptcy Court an emergency motion to enforce the PIQ Order. *See* JA1047. That court promptly held a hearing, at which it concluded that "the Illinois claimants and at least the Maune Raichle firm

violated the terms of this Court's PIQ Order by filing a lawsuit against the debtor in district court in Illinois rather than seeking relief from the PIQ order by motion in this Court." JA1168. The Bankruptcy Court found that plaintiffs in the Illinois Lawsuit and their counsel had received notice of Bestwall's motion seeking the PIQ Order and had an opportunity to present their objections at numerous hearings. *See* JA1171. As a result, the court determined that those plaintiffs and their counsel were "required to comply with the requirements and deadlines contained within that order." *Id.* It accordingly granted Bestwall's motion and ordered the Illinois claimants and their counsel to "appear and show cause why they should not be held in contempt for violating the PIQ order and sanctioned for violating the automatic stay." JA1169, JA1172.

Most plaintiffs and Maune Raichle nevertheless continued to prosecute the Illinois Lawsuit, in which Bestwall was forced to move to dismiss and to file a brief opposing the requested injunction. At the Bankruptcy Court show-cause hearing, after again confirming the due process in connection with entering the PIQ Order (as well as the motion to enforce it), it held nine of the plaintiffs in the Illinois Lawsuit and Maune Raichle in civil contempt for violating the provision of the PIQ Order that required any person seeking relief from that order to seek such relief from the

Bankruptcy Court itself.[1] *See* JA1244–45. The Bankruptcy Court concluded that these plaintiffs and Maune Raichle were "willfully flouting the plain terms of the PIQ Order and this court's authority," stated that it "consider[ed] the contempt of the Illinois Parties to be a very serious matter," and held that "[f]ailure to address their contempt would certainly affect the administration of this case and could affect the administration of bankruptcy cases more generally." JA1376–78. The court nevertheless gave them "an opportunity to purge their contempt by dismissing the Illinois lawsuit." JA1248.

The contemnors declined. Instead, the next day, they moved ahead with a hearing in the Illinois Lawsuit on their motion to enjoin enforcement of the PIQ Order. The Illinois court dismissed the case with prejudice for lack of both subject-matter and personal jurisdiction. *See* JA1520.

After another hearing, the Bankruptcy Court determined that the Illinois plaintiffs' and Maune Raichle's decision to "forg[e] ahead" was "egregious" and violated the Contempt Order, so it entered a Sanctions Order. *See* JA1514; JA1518; JA1523. The court awarded Bestwall $402,817.70 in compensatory damages for the fees and expenses it incurred in defending the Illinois Lawsuit and enforcing the PIQ Order. JA1525.

---

[1] The Bankruptcy Court memorialized its contempt ruling in an August 18, 2021, order (the "Contempt Order"). JA1370.

### D. The Present Appeals

Appellants filed notices of appeal of both the Contempt Order and the Sanctions Order. *See* JA16; JA31. They did not seek leave to appeal either one.

The District Court granted Bestwall's motion to dismiss both appeals as not involving final orders appealable as of right. *See* JA3055; JA3062.[2] It recognized two rules to guide its decision. *First*, under § 158(a) as particularly expounded in *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015), orders in ongoing bankruptcy cases only "may be immediately appealed if they finally dispose of discrete disputes within the larger case." JA3057 (quoting *Bullard*, 575 U.S. at 505). *Second*, "'a party to litigation may not immediately appeal a civil-contempt order,' because it is a non-final judgment and the reviewing court lacks jurisdiction." JA3057 (quoting *United States v. Myers*, 593 F.3d 338, 344 (4th Cir. 2010), in turn citing *Fox v. Capital Co.*, 299 U.S. 105, 107 (1936)).

As to the latter rule, the District Court recognized, as the Bankruptcy Court had, that the current claimants who had filed the Illinois Lawsuit to circumvent the PIQ Order were hardly strangers to the bankruptcy case. Instead, they were "subject to the PIQ Order because they have … asbestos claims against" the Debtor, Bestwall;

---

[2] The appeals from the Contempt Order and the Sanctions Order were not consolidated. As Appellants note, however, Opening Br. 1, the District Court orders dismissing them are nearly identical.

and they "have a significant stake in the bankruptcy case and actively participate." JA3059; JA3066. Likewise, Maune Raichle was hardly "a disinterested non-party, where, here, it was found jointly and severally liable for the contempt and has a congruence of interests with the Illinois Claimants." JA3059; JA3066.

Thus, under the former rule, from *Bullard*, the question was whether the Illinois plaintiffs and Maune Raichle had identified some relevant, finally-disposed-of, discrete dispute within the bankruptcy case to entitle them to appeal the otherwise not appealable Contempt and Sanctions Order. The court found none. *See* JA3059. The PIQ Order itself remained interlocutory as a discovery order, as the District Court had held in the previous appeal, and "the enforcement of that same order is not any more final." JA3059. Plus, even that "interlocutory discovery order" involved "disputes [that] remain ongoing." *Id.* The court, after surveying out-of-circuit decisions from district courts and Article I bankruptcy appellate panels, was unwilling to treat orders enforcing an interlocutory discovery order as "final only in the context of a bankruptcy case when they otherwise would not be immediately appealable in the Fourth Circuit." JA3059. Thus, neither the Contempt and Sanctions Orders on their own nor the PIQ Order to which they relate "finally dispos[e] of [a] discrete dispute[] within the larger case." JA3060 (quoting *Bullard*, 575 U.S. at 505). The District Court added (drawing further from *Bullard*) that, in any event, Appellants "should have other opportunities to appeal the Orders, for example,

during plan confirmation or claim objections," a result "not … significantly different than typical civil litigation." *Id.*

After posting a bond, Appellants sought and obtained a stay of the Sanctions Order pending appeal, from both the Bankruptcy Court and the District Court. JA2667; Nov. 16, 2022 Text-Only Order, No. 3:21-cv-00503-RJC (W.D.N.C.).

### E.     Ongoing Disputes Concerning the PIQ Order

The Appellants were not the only current claimants against Bestwall who fought the PIQ Order. Others failed to answer material parts or objected on jurisdictional grounds. Bestwall moved to enforce the PIQ Order as to those claimants too, and the Bankruptcy Court again granted its motion. *See* JA1569. After meeting and conferring with counsel for current claimants per the court's instructions, Bestwall filed a supplemental motion to enforce, as to some 2,500 claimants who still refused to answer key parts of the PIQ. *See* JA2674.

More than eight months after responses were due, the Bankruptcy Court in February 2022 held hundreds more claimants—including dozens also represented by Maune Raichle, *see* JA2817–18—in contempt for failing to comply with the PIQ Order. *See* JA2800 (the "Second Contempt Order"). The court in this Second Contempt Order gave those claimants as well an opportunity to purge their contempt by fully responding to the PIQ. *See* JA2803. After a further hearing, it concluded that nearly 500 claimants remained in contempt (including two of the claimant

Appellants here), and sanctioned them with a $100 daily fine for each day of continued non-compliance. *See* JA2908; JA2910; JA2915; JA2924 (the "Second Sanctions Order"). The court left open "when, to whom, and at what intervals the Daily Fine should be paid." JA2955.

Last June, the Bankruptcy Court ruled that it would terminate the daily fine under its Second Sanctions Order, effective as of May 18, 2022. *See* JA2954–55. The court reasoned that, because a significant percentage—81%—of current claimants had complied by that date, there had been "substantial compliance . . . with the PIQ Order for purposes of the estimation proceeding." JA2956. In its "Termination Order" entered in August, the Bankruptcy Court also set out a schedule for submitting any remaining evidence of compliance with the PIQ Order and provided that the amount of any already-accrued sanctions "shall be treated as a setoff against any claim a Non-Compliant Claimant ultimately may have against a trust established pursuant to a confirmed plan of reorganization in this bankruptcy case." JA2957. Finally, as to nine claimants who had, "[a]fter the Daily Fine began accruing, … stated for the first time that they did not have Pending Mesothelioma Claims," the court waived the accrued fine. *Id.*

Certain claimants appealed both the Second Contempt Order and the Second Sanctions Order to the District Court. *See* JA2844; JA2928. Those appeals, which the District Court has consolidated for briefing, present ongoing disputes relating to

14

the PIQ Order. Bestwall has moved to dismiss both appeals as interlocutory. Dkt. 19, No. 3:22-cv-00119-RJC (W.D.N.C. May 27, 2022). That motion to dismiss is pending, and the District Court has stayed merits briefing pending its decision on it. Text-Only Order (Sept. 26, 2022), No. 3:22-cv-00119-RJC (W.D.N.C.).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed the appeals from the Bankruptcy Court's Contempt and Sanctions Orders for lack of appellate jurisdiction.

I.     As parties to Bestwall's bankruptcy case, Appellants may not as of right appeal the Contempt and Sanctions Orders on their own. Parties to litigation typically may not appeal such orders because they are not final judgments. *Myers*, 593 F.3d at 344. Appellants are parties to Bestwall's case for this purpose, because of their (or their clients') personal-injury claims against Bestwall, as well as their actual involvement. *See* 11 U.S.C. § 1109(b); *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003). It is precisely because of their claims and resulting interest that, as the Bankruptcy Court found, they received notice of the PIQ Order, took advantage of the opportunity to object to it, and are subject to it. They are hardly disinterested third parties in appealing their contempt of that very same PIQ Order.

II.     Appellants do not dispute that the general rule against immediate party appeals from civil-contempt orders applies to them and would bar entitlement to an immediate appeal in any other context. They argue instead that this rule does not apply in bankruptcy cases. Not so. In this context too, such orders must be appealed in connection with some other appealable order. *E.g.*, *In re Connolly N. Am., LLC*, 2011 WL 1357754 (E.D. Mich. Apr. 11, 2011). District courts have jurisdiction to hear appeals as of right in bankruptcy cases only "from final judgments, orders, and

decrees … in cases and proceedings." 28 U.S.C. § 158(a)(1), (3). Appellants do not argue (nor could they) that any final judgment has been entered resolving Bestwall's bankruptcy *case.* And no relevant *proceeding*—a "discrete dispute[] within the larger case"—has been finally resolved. *Bullard*, 575 U.S. at 501.

The PIQ motion and resulting Order cannot be such a "proceeding," because the PIQ Order is an inherently interlocutory discovery order. In any event, ongoing disputes relating to it illustrate that it has not been finally resolved.

Nor has any other potentially applicable "proceeding" been finally resolved: No plan of reorganization has been confirmed and, indeed, the Bankruptcy Court has not yet even conducted the estimation proceeding, which discovery obtained through the PIQ Order is designed to support.

Appellants' reliance on a line of out-of-circuit bankruptcy appellate panel decisions, beginning with *In re Stasz*, 387 B.R. 271, 275 (B.A.P. 9th Cir. 2008), is misplaced. Appellants do not account for Article III authority, most of it more recent, applying the rule against immediate party appeal from civil-contempt orders in the bankruptcy context. Nor can they justify the flaws in *Stasz*'s reasoning, not least that it stands at odds with the Supreme Court's subsequent decision in *Bullard*. And even if *Stasz* were right on its own terms, it would not govern this case, because the Contempt and Sanctions Orders cannot in any meaningful way be said to be "the only matter before the court." 387 B.R. at 275.

# ARGUMENT

The District Court correctly concluded that the Contempt and Sanctions Orders are non-appealable interlocutory orders. Appellants are subject to the well-established rule that parties in litigation may not immediately appeal civil-contempt orders unlinked to final judgments. Contrary to Appellants' arguments, the Bankruptcy Code does not alter this basic principle but merely adapts it, by permitting an appeal, before conclusion of the whole bankruptcy case, when some "proceeding" within the case—a "discrete dispute"—has finally concluded. *See Bullard*, 575 U.S. at 501–02. But the Bankruptcy Court has not finally resolved any relevant "proceeding" in Bestwall's bankruptcy.

## I.    BECAUSE THE APPELLANT CLAIMANTS ARE PARTIES, THEY ARE NOT ENTITLED, UNDER CIRCUIT PRECEDENT, TO APPEAL THE CONTEMPT AND SANCTIONS ORDERS AS OF RIGHT IN THE ABSENCE OF A FINAL "MAIN" ACTION.

Appellants, as parties to Bestwall's bankruptcy case, are not entitled to appeal the Contempt and Sanctions Orders as of right. A simple syllogism explains why: Parties to litigation typically may not appeal civil-contempt orders, because those orders are not final judgments—particularly when entered to remedy a violation of a discovery order, itself interlocutory. Appellants, as actively involved creditors of Bestwall because of their asbestos-related personal-injury claims against it, are (with their counsel) parties to Bestwall's bankruptcy for purposes of assessing the appealability of the Contempt and Sanctions Orders—orders entered to remedy

violations of the PIQ Order, a discovery order, itself interlocutory. Thus Appellants may not appeal the civil-contempt and accompanying sanctions orders.

**A.** This Court follows the "settled" rule, in service of the final-judgment rule, that "a party to litigation may not immediately appeal a civil-contempt order." *Myers*, 593 F.3d at 344 (citing *Fox*, 299 U.S. at 107). Instead, a "party to a suit" may obtain appellate review of such an order "in connection with appeal from a final judgment in the main action." *Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975); *see Myers*, 593 F.3d at 344 (similar); *see also, e.g.*, *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 92 (2d Cir. 2006) ("an order of civil contempt … is interlocutory and therefore may not be appealed until the entry of a final judgment in the underlying litigation"). This "rule that a party must await final judgment to appeal an adjudication of civil contempt made in the course of a continuing proceeding remains well entrenched." 15B Charles A. Wright et al., Fed. Prac. & Proc. § 3917 (2d ed.).

And when "sanctions are imposed against both client and counsel, jointly," the rule for parties encompasses their counsel—"there is such a 'congruence of interest' that the attorneys must await final judgment in order to appeal" as well. *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir. 1985); *see Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 167 (7th Cir. 1997) (law firm treated as party under this rule where it has a "substantial congruence of interests"

with a party, such as in the case of joint and several sanctions); *Connolly*, 2011 WL 1357754, at *2 (similar).

The rule has particular force for contempt and sanctions orders entered to enforce discovery orders. "Discovery decisions 'bespeak their own interlocutory character,' as they constitute 'only a stage in the litigation and almost invariably involve no determination of the substantive rights involved in the action.'" *In re Naranjo*, 768 F.3d 332, 342 (4th Cir. 2014) (quoting *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994)). Allowing a litigating party to challenge a contempt order imposed for violating a discovery order, itself interlocutory, would readily "circumvent the limits on the appealability of discovery orders and so is not permitted." *In re Rimsat, Ltd.*, 98 F.3d 956, 963 (7th Cir. 1996). This is an instance of the more general principle that "[a]n adjudication of civil contempt used to enforce a judicial order is not appealable if the underlying order is itself not appealable." *Cleveland Hair Clinic*, 106 F.3d at 167. Otherwise, all a party would have to do, "to obtain appellate review of an interlocutory order," would be "to defy it." *Id.*

The circumstances in which courts do treat contempt orders as final and subject to immediate appeal illustrate why party-contemnors must await final judgment to appeal contempt rulings. To take one example, third-party contemnors may appeal a contempt order immediately. Courts have allowed this exception on

the view that it would be a "significant burden" for a non-party to "await proceedings over which it has no control, and . . . to keep informed of the litigation to learn the moment when judgment is entered." 15B Charles A. Wright et al., Fed. Prac. & Proc. § 3914.23 (2d ed.); *see Myers*, 593 F.3d at 344 n.9 ("[A] civil-contempt order may be immediately appealed by a nonparty."). A litigating party, by contrast, has control over the course of the litigation and will receive notice of a final judgment when it is entered. In addition, "for the non-party, the adjudication in contempt usually *is* the 'final decision' in the case; there will never be another, more conclusive order," which also means that the risks of subverting the rule of non-appealability of discovery and other interlocutory orders are much less. *Cleveland Hair Clinic*, 106 F.3d at 167; *see Naranjo*, 768 F.3d at 343 ("a non-party who wishes to appeal from an order granting discovery should 'resist [the discovery] order, be cited for contempt, and then challenge the propriety of the discovery order in the course of appealing the contempt citation'") (quoting *MDK, Inc.*, 27 F.3d at 121).

To take another example, courts treat contempt orders as final and immediately appealable when they are issued after entry of final judgment, for violating such a judgment. *See, e.g.*, *Serv. Emps. Int'l Union Local 32BJ v. Preeminent Protective Servs.*, 997 F.3d 1217, 1221 (D.C. Cir. 2021) (explaining that "contempt orders entered after final judgment are themselves final and appealable."); *Berne Corp. v. Virgin Islands*, 570 F.3d 130, 135 n.10 (3d Cir. 2009)

(similar); *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 500 (6th Cir. 2000) (similar). Such orders are final and appealable because they do not raise concerns about "interference with ongoing proceedings" as do civil-contempt orders entered "in a pending case." 9B Charles A. Wright et al., Fed. Prac. & Proc. § 3917 (2d ed.). Where the main case has thus "effectively terminated," it is as if the contempt proceeding is "the sole court proceeding involved." *In re Reifler*, 2018 WL 3212464, at *3 (S.D.N.Y. June 28, 2018) (citation omitted).

B.    As Appellants are parties to Bestwall's ongoing bankruptcy case, they have, under this rule, no right to immediately appeal from the Contempt and Sanctions Orders.

"In the bankruptcy context a party in interest is one who has a pecuniary interest in the distribution of assets to creditors." *Grausz*, 321 F.3d at 473. The Bankruptcy Code expressly identifies a "creditor" as a "party in interest," who "may raise and may appear and be heard on any issue" in a bankruptcy case. 11 U.S.C. § 1109(b). And this includes claimants against an estate. *See In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (typical party in interest is someone with "a claim to the res [the debtor's assets]," who has "a right to be heard before the res is disposed of") (quotations omitted; alteration in original); *In re Johns-Manville Corp.*, 68 B.R. 618, 625 (Bankr. S.D.N.Y. 1986) (referring to present and future asbestos claimants as parties in interest).

Here, the individual Appellants do not dispute that they are parties to the bankruptcy case. *Cf.* Opening Br. 16. In any event, they are by definition current claimants against Bestwall, thus parties in interest in general and creditors in particular. At the outset of its case, as noted, Bestwall listed them as such. *Supra*, Statement A at 4; *cf.* 7 Collier on Bankruptcy ¶ 1109.02 (16th ed. 2022) ("In general, an entity need not file a proof of claim to be, or remain, a 'creditor' or 'party in interest.'"). And, ultimately in the case, they will be entitled to determine whether a plan of reorganization under § 524(g) is confirmed, as that provision requires an affirmative vote of 75% of current claimants. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). As the District Court explained, personal-injury claimants like the individual Appellants hold "a significant stake in the bankruptcy case" and thus "actively participate" in it. JA3059.

It is precisely because of the individual Appellants' claims against Bestwall and resulting interest in its bankruptcy that Bestwall served them with notice of its request for the PIQ Order and ensured they had an opportunity to be heard in opposition to that request. Indeed, although the Official Committee was already charged with representing them, all but one of the individual claimant-Appellants specially joined its objection to Bestwall's PIQ motion and later appealed the PIQ Order, and Mr. Raichle "appeared personally" to oppose it. JA493–99; JA1016; JA1212; JA1374–75; JA1582; JA1781–82; JA1813; JA1902; JA2032; JA2054;

JA2176. Finally, under the rule above, Maune Raichle, which "was found jointly and severally liable for the contempt and has a congruence of interest with the Illinois Claimants," is treated as a party as well. JA3059.

Nor can it be said of Appellants that the Contempt and Sanctions Orders are the "sole court proceeding involved" in their dispute with Bestwall, or that their disputes with Bestwall have "effectively terminated." *In re Reifler*, 2018 WL 3212464, at *3. Nearly all of them participated in the litigation with respect to the preliminary injunction; nearly all specially participated in the litigation that led to the PIQ Order; and some even were found in contempt a second time in connection with the PIQ Order, incurring daily fines as a result. *See* JA2961; JA2970. And the main bankruptcy case, focused on resolving their and others' asbestos claims, continues. Immediate appeal from the Contempt and Sanctions Orders—and the necessary review of the interlocutory PIQ Order involved in such an appeal—would be exactly the kind of "interference with ongoing proceedings" the rule against immediate party appeals from civil contempt orders is meant to prevent. 9B Charles A. Wright et al., Fed. Prac. & Proc. § 3917 (2d ed.). Thus, the Contempt and Sanctions Order against the Appellants are not immediately appealable in their own right.

## II. THERE HAS BEEN NO FINALLY RESOLVED MAIN "PROCEEDING" IN THE ONGOING BANKRUPTCY CASE TO AUTHORIZE APPEAL AS OF RIGHT OF THE INTERLOCUTORY CONTEMPT AND SANCTIONS ORDERS.

Appellants do not dispute the general rule of civil litigation explained above or that it would apply to them by its terms. They merely insist that courts should ignore it in a bankruptcy case. *See* Opening Br. 12. They are wrong. The rule applies in the bankruptcy context as well, simply adjusted for the statutory bases for bankruptcy appeals, as several district courts and one circuit court (in a non-precedential decision) have recognized. And, here, it readily bars Appellants' appeals. The out-of-circuit bankruptcy appellate panel decisions that Appellants invoke for departing from the general rule, while ignoring all of the district-court decisions, are distinguishable and, in any event, wrong.

District courts have jurisdiction to hear bankruptcy appeals only "from final judgments, orders, and decrees … in cases and proceedings," absent an order granting leave to review "interlocutory orders and decrees." 28 U.S.C. § 158(a)(1), (3). It follows that, although the whole bankruptcy *case* need not finally conclude before an appeal as of right, some "*proceeding[]*" in the case must. As the Supreme Court has put it in explaining that term of art, "orders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete disputes* within the larger case." *Bullard*, 575 U.S. at 501 (citation omitted; emphasis added). Congress thereby accounted for the fact that "[a] bankruptcy case involves an aggregation of *individual*

*controversies*, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Id.* (citation omitted; emphasis added).

Whereas an "adversary proceeding" in a bankruptcy case—which ordinarily would be a stand-alone lawsuit but for the bankruptcy—qualifies as a "discrete dispute," "minor disagreements" do not, nor (for the same reasons) do all "contested matters." *See Bullard*, 575 U.S. at 505–06 (explaining); *compare* Fed. R. Bankr. P. 7001, *et seq.* (rules for an adversary proceeding, generally following Fed. R. Civ. P.), *with id.* R. 9014 (general rule for any contested matter). One cannot define "the pertinent proceeding so narrowly that the requirement of finality would do little work as a meaningful constraint on the availability of appellate review," producing "frequent piecemeal appeals." *Bullard*, 575 U.S. at 505.

The general civil-litigation rule that party appeals of a civil-contempt order are interlocutory, thus only appealable as of right in connection with appeal of a final "main" action, readily maps onto this bankruptcy appellate scheme: If the bankruptcy case is ongoing, such an appeal requires a connection with a final order concluding a "proceeding" within the case beyond the civil contempt itself.

One of the seminal cases holding that a party may not immediately appeal civil-contempt sanctions involved a judgment debtor's failure to comply with discovery. In *Fox v. Capital Co.*, 299 U.S. 105 (1936), the Supreme Court affirmed dismissal of the appeal because the proceeding to which the discovery sanctions

related was "in its initial stages" and "what the final relief would be was still a subject of conjecture." *Id.* at 107–08. The Seventh Circuit cited *Fox* in a bankruptcy appeal in support of the rule that "an order holding a party in civil contempt is not a 'final decision' under 28 U.S.C. § 158(d) or § 1291." *In re Teknek, LLC*, 512 F.3d 342, 344 (7th Cir. 2007). And the court in *Connolly* thereafter explained that "the courts insist that a 'final' (and hence appealable) bankruptcy court ruling must resolve a 'discrete dispute,'" which did not include a civil-contempt order. 2011 WL 1357754 at *2–3 (citations omitted). Nor was the appellant's challenge to the civil-contempt order "coupled with a challenge to the validity of the underlying order or injunction giving rise to the finding of contempt" and "itself appealable as of right." *Id.* at *2; *see also Oliner v. Kontrabecki*, 158 F. App'x 1, 2 (9th Cir. 2005) (mem.).

Thus, absent "final judgment" in Bestwall's bankruptcy case, the Contempt and Sanctions Orders may be appealed as of right only in connection with some final judgment, order, or decree in a "proceeding[ ]" in that case. § 158(a). But, as explained below, there has not yet been any such proceeding.

A. **Because the PIQ Order is a discovery order, it is inherently interlocutory, so even if finally resolved (which it is not), it would not conclude a "proceeding."**

The PIQ Order does not provide Appellants a finally resolved "proceeding" under § 158(a). As a discovery order, it is *inherently* interlocutory. And even if it were not, it has not been finally resolved.

1. As the District Court explained in dismissing the Official Committee's appeal from the PIQ Order, that order "does not finally dispose of a concrete issue in the case and is therefore not a final order under 28 U.S.C. § 158(a)." JA1042. That is because it is a discovery order, and discovery orders "[a]s a general rule . . . are not final decisions subject to immediate appeal." *Id.* (quoting *Bryson*, 406 F.3d at 288).

Nothing about the bankruptcy context changes this general rule. Instead, as the District Court observed, the rule that discovery orders are inherently interlocutory "has been followed by numerous courts in the context of bankruptcy, and specifically in the context of Rule 2004 orders." JA1042 (quoting *W.S. Badcock Corp. v. Beaman*, 2015 WL 575422, at *1 (E.D.N.C. Feb. 11, 2015)); *see, e.g.*, *In re Royce Holmes LP*, 466 B.R. 81, 89 (S.D. Tex. 2012) (noting "extensive case law holding bankruptcy discovery orders to be interlocutory); *In re Kaiser Grp. Int'l, Inc.*, 400 B.R. 140, 144 (D. Del. 2009) (noting that the majority of courts have held that Rule 2004 Orders are interlocutory). And the interlocutory nature of the PIQ Order in particular was obvious to the court when it recognized that, even if it reversed the PIQ Order, nothing would end: "the litigation would return to the Bankruptcy Court for the estimation proceeding," and "[t]he underlying dispute between the parties … would be neither practically nor legally resolved no matter the ruling." JA1044–45.

Thus, concluding litigation concerning the PIQ Order would not finally resolve any "proceeding" under § 158 and would provide no help to Appellants in appealing the Contempt and Sanctions Orders. As the District Court put it simply: "This Court previously concluded the PIQ Order is an interlocutory order, and, here, the enforcement of that same order is not any more final." JA3059. This is the same logic that, as discussed above, courts have recognized generally in connection with discovery orders in civil litigation to avoid circumventing the lack of finality through a contempt appeal. *See Cleveland Hair Clinic*, 106 F.3d at 167; *Rimsat*, 98 F.3d at 963. And it is just as sound in this context. That is why the District Court saw no good reason to treat contempt or sanctions orders as "final only in the context of a bankruptcy case when they otherwise would not be immediately appealable in the Fourth Circuit." JA3059.

**2.**     In any event, not only is the dispute involving the PIQ Order not a discrete "proceeding" under § 158(a), it is not even finally resolved. Pending in the District Court are the *sixth* and *seventh* appeals from the PIQ Order or orders seeking to enforce it. *See* Dkt. 19, at 2, No. 3:22-cv-00119-RJC (W.D.N.C.). And none of the orders challenged in those appeals has even finally adjudicated all claimants' compliance with the PIQ Order.

As to the Appellant claimants here, the Contempt and Sanctions Orders do not address the substance of the PIQ Order or the Appellants' fulfillment of the

discovery it authorized. Instead, they simply reflect the Bankruptcy Court's determinations that Appellants violated the PIQ Order by attempting to attack it collaterally through the Illinois Lawsuit, and refused to purge their contempt. *See* JA1370; JA1518.

Similarly, the appeals from the Second Contempt and Sanctions Orders remain pending in the District Court. The Bankruptcy Court's order last August terminating those contemnors' continuing accrual of daily fines did not, as Appellants contend, "fully resolve" their objections to and refusal to comply with the PIQ Order. *See* Opening Br. 19. Instead, it provided an opportunity for claimants to present evidence of their compliance with the PIQ Order. *See* JA2955–57. The court found that, as of the date of the Termination Order, 19% of claimants had not fully complied with the PIQ Order. *See* JA2956. The Termination Order further provided that the contemnors' fine would not be imposed immediately; instead, it will be assessed as a set-off against any recovery they may ultimately take from an eventual trust established through Bestwall's bankruptcy. *See* JA2957 ¶ 6.

Thus, contrary to Appellants' assertions, the District Court was quite right— not only at the time, but even now—to refer to the PIQ Order as "an interlocutory discovery order for which disputes remain ongoing." JA3059. And it thus had all the more reason to refuse to treat the Contempt and Sanctions Orders as "final only in

the context of a bankruptcy case when they otherwise would not be immediately appealable to the Fourth Circuit." JA3059.

**B.**     **No potentially relevant actual "proceeding" in the bankruptcy case has finally concluded.**

No other matters in the bankruptcy case that might qualify as relevant discrete disputes, "proceedings," have finally concluded. Thus, as the District Court correctly recognized, there is no final order in any proceeding to which the Contempt and Sanctions Order yet may be connected. *See* JA3060.

The Bankruptcy Court entered the PIQ Order to enable Bestwall to "obtain basic facts about the existence, nature, and merits of mesothelioma claims" asserted against it, which will "provide the factual foundation for the negotiation, formulation, solicitation, and ultimately confirmation of a plan of reorganization in this case." JA190. It thus found the discovery "relevant to estimation of the asbestos liability of the Debtor and the negotiation, formulation, and confirmation of a section 524(g) plan of reorganization that will be accepted by at least 75% of current asbestos claimants who vote on the plan." JA789; *see* JA781 (similar, at hearing). In dismissing the Official Committee's appeal from the PIQ Order, the District Court likewise observed that the discovery the order authorized will aid estimation of the "asbestos liability of [Bestwall]," as well as "the administration of the estate, plan formulation, and plan confirmation." JA1038.

This points to other matters in the bankruptcy case that might be discrete disputes, actual "proceedings," whose conclusion might yield a final, appealable order to which the Contempt and Sanctions Orders (with the PIQ Order) could be appropriately connected. First, Appellants might hereafter seek to appeal following the Bankruptcy Court's estimation proceeding. Both lower courts generally refer to the planned estimation as its own "proceeding" (albeit not in the context of assessing appellate jurisdiction), JA1044, JA782–85. And other authority suggests that an estimation may be its own proceeding in the § 158 sense. *See In re Armstrong*, 292 B.R. 678, 685 (B.A.P. 10th Cir. 2003) (rejecting argument that appeal from order estimating claim for voting on plan was an "improper attempt to appeal an ancillary order"); *compare Ritzen Grp. Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 590 (2020) (consulting "[c]ore proceedings" listed in 28 U.S.C. § 157(b)(2) as "textual clue" in identifying "proceedings" for finality purposes); *Bullard*, 575 U.S. at 503 (same), *with* § 157(b)(2)(B) (listing "estimation of claims or interests for the purposes of confirming a plan under Chapter 11" as a core proceeding); *cf. Ritzen Grp.*, 140 S. Ct. at 590 (discussing estimation under 11 U.S.C. § 502); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986) (assessing "which proceeding takes precedence," bankruptcy court's aggregate estimation of mass tort liability or district court's conducting of jury trials on claims).

Appellants could also later appeal following plan confirmation, indisputably its own "proceeding." *See Bullard*, 575 U.S. at 503, 505 (describing as a "proceeding" the "process culminating in confirmation [of a plan] or dismissal"); *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 374 (4th Cir. 2017) (citing *Bullard* and noting that "Congress has made Chapter 13 plan confirmation and claim-allowance on contested unsecured claims to be separate and distinct actions within a debtor's bankruptcy proceeding."). The District Court itself has both contrasted the interlocutory PIQ Order with the anticipated estimation (the "underlying dispute") and pointed to "plan confirmation or claim objections" as occasions for appealable orders. JA1044, JA3060; *cf.* 28 U.S.C. § 157(b)(2)(B)&(L) (listing as core proceedings "allowance or disallowance of claims against the estate" and "confirmations of plans").

But no such "proceeding" has finally concluded. That Appellants must therefore wait, like a civil litigant, is a feature, not a flaw, of the legal framework.

Appellants argue that the District Court clearly erred by "propos[ing]" that the "contempt and sanctions proceedings may only become appealable after the Debtor confirms a plan [of reorganization] or objects to yet-unasserted claims." *See* Opening Br. 20. Not so. Far from clear error (if a factual determination at all), the District Court's observation is perfectly consistent with *Bullard*.

As the Supreme Court recognized, "our litigation system has long accepted that certain burdensome rulings will be 'only imperfectly reparable' by the appellate process." *Bullard*, 575 U.S. at 506 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994)). That "prospect is made tolerable in part by" the fact that "bankruptcy courts, like trial courts in ordinary litigation, rule correctly most of the time." *Id.* at 507. And when they do not, the Bankruptcy Code recognizes that some rulings "will be important enough" to "be addressed immediately." *Id.* at 508. Among other options, "a district court or BAP can . . . grant leave to hear such an appeal" under § 158(a)(3). *Id.* But Appellants here did not pursue (or obtain) such leave.

## C.    Appellants' counter-argument fails.

No precedent of this Court or any other circuit contravenes the conclusive points above that a party to litigation ordinarily is not entitled to challenge an order of civil contempt on appeal until final judgment (Argument I) and that the same rule applies in bankruptcy, including here (this Argument II, above). Appellants, however, challenge the latter point, based only on a line of bankruptcy appellate panel rulings in other circuits, beginning with and following *In re Stasz*, 387 B.R. at 275. *See* Opening Br. 17–19. Such decisions cannot bind Article III courts, *see Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990), certainly not in

a different circuit, and they in any event should not control this case, for several reasons.

**First**, Appellants in emphasizing the *Stasz* line of cases ignore the more recent and stronger authority from Article III courts, which the District Court here noted but Appellants do not even cite. *See* JA3058–59 (citing *Connolly* as well as *In re VeroBlue Farms USA, Inc.*, 2021 WL 3260087 (N.D. Iowa June 30, 2021), and *Regan v. Hon*, 2021 WL 3603051 (N.D.N.Y. Aug. 13, 2021)); *see also Oliner v. Kontrabecki*, 305 B.R. 510, 522–23 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 1; *Kowalski v. Paloian*, 2019 WL 2297457, at *8 (N.D. Ill. May 30, 2019); *Reifler*, 2018 WL 3212464, at *2–3.

These courts explain that "an immediate, separate appeal of the civil contempt order would result in piecemeal litigation of precisely the sort that the § 158(a)(1) requirement of 'finality' is intended to avoid." *Connolly*, 2011 WL 1357754, at *3. For example, in *Connolly*, the district court applied the general rule for appeal of civil-contempt orders to dismiss an appeal by a trustee and his counsel from an order holding them in contempt for disregarding stay orders (which they had not appealed) prohibiting them from suing a former trustee. *See id.* at *1–2. The stay orders had been entered in the main bankruptcy case, not an adversary proceeding. The court explained that, even in bankruptcy, "the courts insist that a 'final' (and hence appealable) bankruptcy court ruling must resolve a 'discrete dispute'—that is, one

that is essentially separable from the larger case." *Id.* at *4. The Ninth Circuit in *Oliner*, three years before *Stasz*, readily "agree[d] with the district court" that a bankruptcy court's order imposing civil-contempt sanctions on an official of the debtors "was interlocutory rather than final" under § 158(a). *Oliner*, 158 F. App'x at 2; *see also In re VeroBlue Farms*, 2021 WL 3260087, at *3 (holding bankruptcy court's contempt order for party's failure to answer discovery in an ongoing adversary proceeding was "not a final order immediately appealable under Section 158(a)(1).").

**Second**, *Stasz*'s reasoning suffers from several flaws, particularly in light of the subsequent precedent of *Bullard*.

The bankruptcy court in *Stasz* had held a Chapter 7 debtor in contempt and sanctioned her for failing to comply with a Rule 2004 discovery order. The bankruptcy appellate panel held the sanctions order final and appealable, notwithstanding circuit precedent (*In re Markus*, 313 F.3d 1146, 1151 (9th Cir. 2002)) that the panel described as holding that "sanctions awarded by a bankruptcy court within an adversary proceeding" were interlocutory. 387 B.R. at 274–75. The panel stated its own holding as that "an order of civil contempt issued in a contested matter within a main bankruptcy case, unlike in an adversary proceeding, is a final, appealable order." *Id.* at 272.

In support, the panel primarily claimed that "the contested matter alleging Debtor's contempt was the only matter before the court" and pointed out that Bankruptcy Rule 9020 expressly mentioned a contempt proceeding as a type of contested matter. *Id.* at 275. The panel also worried that, if the sanctions order were not immediately appealable, it was "unclear" when it would be. *Id.* at 276.

This is questionable at several levels: The bankruptcy *case* was ongoing (making off-point the panel's invocation of the exception for *post-judgment* contempt orders, 387 B.R. at 275; *see Reifler*, 2018 WL 3212464, at *3); the underlying Rule 2004 order was a *discovery* order and *not finally resolved* (the debtor had not complied, *see* 387 B.R., at 274, 276); and *Bullard* has since confirmed that the mere fact that a matter is *contested* does not make it a § 158 proceeding. 575 U.S. at 505. Nor, *Bullard* adds, is there anything magical, for identifying a proceeding, about whether a matter "coincide[s] precisely with a particular 'adversary proceeding' or 'contested matter' under the Bankruptcy Rules." 575 U.S. at 505–06; *cf. Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 818 n.10 (9th Cir. 2012) (noting, in assessing jurisdiction under 28 U.S.C. § 1291 to review order of district court sitting in bankruptcy, that "whether the proceeding in a specific case is an 'adversary proceeding' . . . or a contested matter'" was not relevant).

The *Stasz* panel also misread circuit precedent in *Markus*, which *supports* applying across bankruptcy contexts the ordinary rule against parties' immediately

appealing contempt and sanctions orders as of right. (And it never mentioned *Oliner*.) The sanctions order in *Markus* was *not* issued "within an adversary proceeding," 387 B.R. at 275; rather, the bankruptcy court sanctioned the creditor for a motion it had filed, and the court even had denied with an order to show cause, before the creditor initiated its adversary proceeding. *See Markus*, 313 F.3d at 1148–49. The Ninth Circuit held that the creditor, in appealing the sanctions order only later, in connection with appealing dismissal of her adversary proceeding, had not been untimely—thus, that the sanctions order, generally "pertaining to [the debtor's] Chapter 7 bankruptcy *case*," had *not* been immediately appealable. *Id.* at 1151 (emphasis added). *Markus* thus draws no line for appealability between bankruptcy contempt and sanctions orders entered in adversary proceedings and those entered in other contexts. Regardless, they are not (absent some background exception) appealable as of right *on their own*: They are, per the background rule from civil litigation, "interlocutory orders that are not appealable until final judgment is entered," becoming appealable only in connection with the final completion of either some related "proceeding" or the bankruptcy case. *Id.*; *see also Ritzen Grp.*, 140 S. Ct. at 591 (identifying the "proceeding" for appealability across "the entire category" rather than for "only a subset of cases").

Finally, particularly after *Bullard*, the panel's uncertainty about when the Chapter 7 debtor otherwise might have appealed, even if proved true (if debtor's

recalcitrance led the bankruptcy court to dismiss her case, she certainly could have appealed), does not justify reverse engineering a discrete dispute for policy reasons. *See Bullard*, 575 U.S. at 507–09 (rejecting force of argument that there would "be no effective means of obtaining appellate review of the denied proposal"). And the effect of the rule as stated in *Stasz* is to go to the other extreme: Even though a Rule 2004 discovery order in an ongoing bankruptcy case remains technically interlocutory, any party subject to one may obtain immediate appeal simply by flouting it—precisely what the ordinary (and applicable) rule prevents.

*Stasz* of course did not address the later-in-time ruling in *Bullard*. The panel that followed *Stasz* after *Bullard*, however, made no effort to do so. *See In re Norrie*, 2016 WL 6407839, at *8 (B.A.P. 9th Cir. Oct. 26, 2016) (mem.) (holding that debtor's contempt for violation of a Rule 2004 order was final under *Stasz*).

**Third**, if *Stasz* were nevertheless correct, it would not control this case. That court's reasoning should inform how one understands the scope of its rule. And in its reasoning the court emphasized both that the debtor's contempt "was the only matter before the court" and that the possibility of any later appeal by the debtor in the Chapter 7 case was "unclear." 387 B.R. at 275. Here, as discussed above (Args. II.A & II.B), before the Bankruptcy Court in this Chapter 11 case are, at a minimum: the PIQ Order itself, which has outstanding issues, given that (unlike in *Stasz*) the Contempt and Sanctions Orders simply concerned a collateral attack on the Rule

2004 Order; an estimation proceeding that is in process; and a future plan-confirmation proceeding. The (first) Contempt and Sanctions Orders thus are hardly the only matters before the Bankruptcy Court, and there is the real expectation of a later appealable order related to the Contempt and Sanctions Orders.

## CONCLUSION

For all of these reasons, the Court should affirm the judgment below.

Dated:
December 22, 2022

Respectfully submitted,

 /s/ *C. Kevin Marshall*

Gregory M. Gordon
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Tex. 75201
(214) 220-3939
gmgordon@jonesday.com

C. Kevin Marshall
Megan Lacy Owen
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
ckmarshall@jonesday.com
mlacyowen@jonesday.com

Garland S. Cassada
Richard C. Worf, Jr.
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
(704) 377-2536
gcassada@robinsonbradshaw.com
rworf@robinsonbradshaw.com

Preetha Suresh Rini
ROBINSON, BRADSHAW & HINSON, P.A.
1450 Raleigh Rd.
Suite 100
Chapel Hill, N.C. 27517
(919) 328-8820
prini@robinsonbradshaw.com

*Counsel for Appellee Bestwall LLC*

## CERTIFICATION

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 9,070 words, excluding the parts exempted by Fed. R. App. P. 32(f). This Brief has been prepared in a proportionally spaced 14-point Times New Roman font in the text and footnotes, using Microsoft Word. This certification has been prepared in reliance on the word-count function of Microsoft Word.

*/s/ C. Kevin Marshall*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 22, 2022, I filed the foregoing using this

Court's CM/ECF system, which effected service on all parties.

_/s/ C. Kevin Marshall_